FILED



10:30 am, 2/6/23

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| PETER SAHAGEN, et al., | |
| Plaintiffs, | |
| vs. | Case No.  21-CV-220-NDF |
| BRIAN M. LORA, et al., | |
| Defendants. | |

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Brian Lora and Real Social Equity Corp., ("RSE Corp.") move for partial summary judgment on the claims against them by Plaintiffs Peter Sahagen and the Trustees of the Impact Housing Foundation Trust ("Trust"): Carole Mapleback and Christian Moore.  ECF 27, 28.  Plaintiffs filed their opposition to the motion, ECF 32, and Defendants have replied.  ECF 42.  As follows, the motion is GRANTED in part and DENIED in part.

I.   Facts

Plaintiffs bring claims for: 1. immediate preliminary injunction;[1] 2. fraud in the inducement and intentional misrepresentation; 3. breach of the covenant of good faith and fair dealing; 4. harassment and assault; 5. punitive damages; 7. declaratory judgment

---

[1] The Court has not received a motion on Plaintiffs' claim for immediate injunctive relief.

regarding intellectual property ownership; and 8. establishment of a constructive trust.[2] Verified Second Amended Complaint, ECF 9.

By way of background, the allegations in this case concern intellectual property ("IP") developed by Plaintiff Sahagen and a business plan that he asserts Defendant Lora agreed to implement. Second Amended Complaint, ECF 9. The business plan consisted of a three-tiered structure of ownership and control to commercialize the IP. *Id.* A charitable trust would be the top tier - Plaintiffs assert this is Plaintiff Trust. The middle tier would be Social Benefit CoFounder Holdings, LLC ("Holdings, LLC"), which is not a party to the suit. The bottom tier would be the operating company, Defendant RSE Corp. *Id.*

At the heart of the case is Plaintiffs' claim that Plaintiff Sahagen was fraudulently induced by Defendant Lora into assigning his IP to the middle tier: Holdings, LLC. *Id.* at ¶ 59.

In its motion, Defendants assert the following material facts which are listed together with Plaintiffs' contentions.

1. Plaintiff Peter Sahagen is the creator of certain IP in the form of patents and patent applications related to the real estate and mortgage markets. (Lora Aff. ¶ 4; Defs.' Ex. A, IP Assignment to Holdings, LLC). The IP is designed to allow non-related individuals to work together to purchase homes and build equity. (Lora Aff. ¶ 4).

Plaintiffs agree with these facts.

---

[2] Defendant Jigolyk and Plaintiffs' claim 6, breach of fiduciary duty against Jigolyk, were dismissed without prejudice on April 8. 2022. ECF 17.

2. In September 2020, Sahagen met Brian Lora and began to urge Lora to invest in the IP so that it could be developed into a commercially available product. (Lora Aff. ¶ 5). Lora had made his career in the technology industry and specifically had worked as a Certified Technology Officer in the financial services and banking industries. (Lora Aff. ¶ 6).

> Plaintiffs dispute these stated facts and contend that Peter Sahagen did not "begin to urge Lora to invest in the IP." (*See* Sahagen Aff. ¶¶ 49-50).

3. Ultimately Lora agreed to invest $600,000.00 of his own money into the IP and became the lead investor and CEO of RSE Corp. (Lora Aff. ¶¶ 5, 7, Exhibit B). As a result, Sahagen executed an assignment of the IP to Lora irrevocably assigning the IP. (Lora Aff. ¶ 7, Defs.' Ex. A).

> Plaintiffs dispute these stated facts and assert that Peter Sahagen never "executed an assignment of his Social Equity IP to Lora irrevocably assigning the IP" because he "executed [the] 4/1/21 IP ASSIGNMENT to [Holdings, LLC] not to Brian Lora." (*See* Sahagen Aff. ¶ 66.)

4. The IP Assignment was the only agreement between Defendants and Sahagen and includes the totality of their commitments to one another. (Lora Aff. ¶ 7).

> Plaintiffs dispute these stated facts and assert "that the IP ASSIGNMENT is not the 'only agreement between Defendants and Sahagen and includes the totality of their commitments to one another,' because "[t]here were six (6) basic agreements [he] made with Brian Lora when [they] met in person in Costa Rica in early November 2020." *See* Sahagen Aff. ¶¶ 18; 19-21, 24-26, 28-31, 44-45, 48, 51 63, 70, 73-74.

5. Significantly, Sahagen has never held any interest in RSE Corp. He has not been a shareholder, officer, director or even an employee. (Lora Aff. ¶ 8). Sahagen has not invested a single dollar in RSE Corp. (Lora Aff. ¶ 8). Other than RSE Corp.'s ownership

of the IP he developed, Sahagen has never had any formal role whatsoever in RSE Corp. (Lora Aff. ¶ 8).

> Plaintiffs dispute all of these stated facts. (Sahagen Aff. ¶¶ 6-8, 10-15, 20-21, 24, 26, 28-29, 48, 62, 72, 74.) The Court has reviewed Plaintiffs' cited materials which state that Sahagen set up, and paid to set up, RSE Corp. as a Wyoming Corporation and that Sahagen registered, and paid to register, the related websites. (*Id.* at ¶ 10).

6. Prior to entering into the IP Assignment, Lora learned that Sahagen had an outstanding IRS lien filed in New York in excess of $88,000,000.00, and that he had a long and colorful history of litigation. (Lora Aff. ¶ 11). Because of those issues Lora informed Sahagen that he did not want him to have any control or interest in RSE Corp. (Lora Aff. ¶ 11).

> Plaintiffs dispute these stated facts. (*See* Sahagen Aff. at ¶ 6; Sahagen Dep. pp. 15-21.) The Court has reviewed Plaintiffs' cited materials which indicate Sahagen believes the IRS lien is significantly less. (Sahagen Dep. pp 15-21).

7. Sahagen agreed to be an informal advisor and agreed to receive a monthly payment after the "seed round" of financing was raised. (Defs.' Ex. A, IP Assignment). Those commitments were memorialized in the IP Assignment. (*Id.*)

> Plaintiffs agree but add that Plaintiff Sahagen entered into the IP assignment relying on Mr. Lora's fraudulent misrepresentations. (*See* Sahagen Aff. ¶¶ 10-51, 54-56, 63-64, 66 and 70; *see* Sean Jigolyk Aff. ¶¶ 4-5, 9-12, 14, 17-25, 31, 33-36; *see* Sahagen/Holdings Rescission Letter 12/3/21 Doc. 1, Ex. B).

8. Peter Sahagen and Brian Lora had many discussions about [Sahagen's] idea of a three-tiered structure for RSE Corp. (Lora Aff. ¶ 9).

> Plaintiffs agree with these stated facts. (*See* Jigolyk Aff. ¶ 14) ("All of us agreed and understood that the trust must always have control, including voting control, over [RSE Corp.] and [Holdings, LLC]).

9. That structure contemplated an operating corporation, RSE Corp., a holding company with ownership in the operating corporation, Holdings, LLC, and a future charitable entity that would benefit from dividends paid by RSE Corp. That is the structure that Lora ultimately adopted for the company. (Lora Aff. ¶ 9, Ex. C).

> Plaintiffs dispute these stated facts as incomplete and mistaken. (*See* Jigolyk Aff. ¶ 14.)

10. After making his investment, Lora became the largest shareholder of RSE Corp. and took the role as CEO of RSE Corp. (Lora Aff. ¶¶ 5, 7). In that role, Lora made the decision to transfer RSE Corp. to Delaware. (Lora Aff. ¶ 12).

> Plaintiffs dispute these stated facts. Plaintiffs assert that [Lora] made the decision to transfer RSE Corp., Inc. to Delaware as the CEO of RSE Corp., and not as RSE Corp.'s largest shareholder, because Brian Lora is not yet a legal shareholder of RSE Corp., Inc. (*See* Sahagen Aff. ¶¶ 28, 31-43, 49-51, 62). Plaintiffs contend "[w]hen Brian Lora swears he is a shareholder of RSE Corp., Inc., he is not a shareholder of RSE Corp., instead, he has a contract to receive future shares." Plaintiffs further contend that Sean Jigolyk is the only shareholder of RSE Corp. because Lora did not pay Jigolyk "the $1,000 I was owed for all of my shares in [RSE Crop.] under the Stock Repurchase Agreement." (Jigolyk Aff. ¶ 28).

11. [Lora] concluded that having the company as a Delaware corporation would help facilitate his efforts to raise investment moneys for RSE Corp. (Lora Aff. ¶ 12).

> Plaintiffs dispute these facts. (*See* Sahagen Aff. ¶¶ 51, 62-63). The Court has reviewed the Plaintiffs' cited materials which include Sahagen's argument that the corporate move was a pretext for Lora to accumulate equity. (*Id.*).

12. Peter Sahagen was informed of that decision before the transfer and disagreed with that decision. (Lora Aff. ¶ 12). The ownership of RSE Corp. did not change as a result of that transfer. (Lora Aff. ¶ 12). Sahagen's rights under the IP Assignment did not change after the transfer. (Defs.' Ex. A. Intellectual Property Assignment).

> Plaintiffs dispute these facts. (*See* Sahagen Aff. ¶¶ 32-46, 51, 63-64; Jigolyk Aff. ¶¶ 28, 35). The Court has reviewed the cited materials which state Jigolyk owned all of the shares of RSE Corp. before the transfer but that upon the transfer to Delaware, Lora issued all shares to himself and to Holdings, LLC. (Sahagen Aff. ¶ 41).

13. The Plaintiff Trust was not formed until September 3, 2021, approximately 6 months after the purported fraudulent inducement in this matter. (Defs.' Ex. F, Impact Housing Foundation Trust Irrevocable Trust Agreement). It was formed without the knowledge or the involvement of the Defendants. (Lora Aff. ¶ 16). The Defendants did not know of the existence of the Trust until the filing of this lawsuit. (Lora Aff. ¶ 16).

> Plaintiffs assert that "everyone including Brian Lora, agreed, before and during March 2021, that the Trust would be created under Wyoming law as soon as reasonably practical." (Sahagen Aff. ¶¶ 10-18, 20-29, 45; Jigolyk Aff. ¶¶ 9-15, 26-35). Plaintiffs dispute the assertion that the Trust was formed without the knowledge of the Defendants and Defendants were unaware until the filing of this [December 3, 2021] lawsuit." (*See* Sean Jigolyk Aff. ¶¶ 26) ("I also informed Brian Lora once the trust agreement had been finalized and executed in October of 2021").

14. Notably, and contrary to the caption in this case, the Plaintiff Trust was "formed as a non-charitable trust pursuant to Wyo. Stat. Ann. § 4-10-410, as amended." (Defs.' Ex. F, Impact Housing Foundation Trust Irrevocable Trust Agreement). As such it seems to have no relationship to the three-tiered structure originally proposed by Sahagen.

> Plaintiffs admit that the Trust was first formed as a non-charitable trust. (*See* Sahagen Aff. ¶¶ 69-74) ("[t]he reason the Trust was initially drafted and created as a 'non-charitable' trust is because we did not yet have the required 501(c)(3) status from the Internal Revenue Service making it an authorized, tax-exempt entity. But that was, and remains, our agreed intent. Indeed, in the "[w]hereas" clause of the Trust, it is specifically stated that, '[w]hereas, it is the intention of the parties to evolve, convert, or decant (See Section 6.3 below) this trust into a *non-profit public bequest foundation* or trust as practicable and appropriate.' (Italics in original). The Trust is the precursor to the eventual charitable entity identified in my draft of the Holdings Operating Agreement"). (*See* Sahagen Aff. ¶¶ 69-74). Plaintiffs dispute the statement that "the trust seems to have no relationship to the three-tiered

6

structure originally proposed by Sahagen." (*See* Sahagen Aff. ¶ 74) ("[t]he Trust is the predecessor entity for the future charitable trust agreed to by Brian Lora, Sean Jigolyk, and me. It has an interest in [Holdings, LLC] and [RSE Corp., Inc.]").

15. A charitable trust for the purposes identified in the Holding company's operating agreement has not yet been created. (Lora Aff. ¶ 15).

> Plaintiffs dispute these stated facts. (*See* Sahagen Aff. ¶¶ 69-74; Section 1.2(g) of Holdings' Operating Agreement) ("Charitable Interest" shall mean the percentage interests of the Company to be owned by a charitable organization, trust, 501(c)(3), or other entity under state or federal law whose primary purpose is the furtherance of a not-for-profit or charitable cause").

16. It has not been created because of the significant expense of creating the trust and because RSE Corp. does not yet have any dividends to pay out to a charitable trust. (Lora Aff. ¶ 15). However, the operating agreement ensures that all income attributable to the charitable trust will be held until its formation. (Defs.' Ex. D, Holdings, LLC Operating Agreement Section 5.1).

> Plaintiffs dispute the assertions in the final sentence. (*See* Sahagen Aff. ¶¶ 73-74). The Court has reviewed Plaintiffs' cited paragraphs. They indicate that Jigolyk established the Trust upon Sahagen's commission to be the predecessor entity for the future charitable trust in the business plan, and that the Trust contains a paragraph indicating the intent to convert the Trust into a non-profit charitable trust as practicable and appropriate. (*Id.*)

17. Among Sahagen's claims is an assault claim based upon two pictures that were sent through a mobile application. Mr. Lora and Mr. Sahagen would occasionally exchange photos or other items of interest through mobile applications. (Lora Aff. ¶ 13).

> Plaintiffs admit these facts.

18. When Mr. Lora sent the photos to Mr. Sahagen he was in North Carolina and Sahagen was living in Costa Rica. (Lora Aff. ¶ 13).

Plaintiffs admit these facts.

19. The photos were not intended in any way to intimidate or threaten Mr. Sahagen, and Mr. Lora had no reasonable expectation that simply sending pictures would be perceived as threatening by someone who was thousands of miles away. (Lora Aff. ¶ 13).

> Plaintiffs assert that Defendants omit facts. (Sahagen Aff. ¶ 68). The Court has reviewed the cited paragraph which includes Sahagen's statement that the call on June 18th, the day before the photos were sent, was the day that Lora converted RSE Corp. to a Delaware company and that Lora "yelled in a menacing tone 'I have formed a new partnership with John (Gumboc) and Sean (Jigolyk) and you BETTER NOT INTERFERE WITH IT.'" (*Id.*)

20. After the photos were sent, Sahagen and Lora continued to communicate. (Lora Aff. ¶ 14). Sahagen never suggested the photos were concerning and never gave any indication that he was intimidated as a result of them. (Lora Aff. ¶ 14).

> Plaintiffs partially admit, and partially deny, the assertions in these two sentences. (*See* Sahagen Aff. ¶ 68).

Plaintiffs add additional facts in their memorandum. ECF 35. However, the Court declines to recite these facts and only considers the facts raised above and in Plaintiffs' argument because Plaintiffs' additional facts do not comply with Local Rule 7.1.(b)(2)(D).[3]

II.   *Standard of Review*

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[3] Local Rule 7.1.(b)(2)(D) permits the non-moving party, here the Plaintiffs, to "set forth additional facts other than those which respond to the movant's brief which the non-movant contends are material to the resolution of the motion. Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies." Plaintiffs fail to number each discrete fact, fail to omit facts already presented to dispute Defendants' factual assertions, and fail to include only those facts that "plaintiff contends are material to the resolution of the motion." Instead, Plaintiffs submitted thirteen pages of narrative prose, including one and a half pages of single-spaced block quotes, most of which is not raised in Plaintiffs' meager two-and-a-half-pages of argument.

as a matter of law." Fed. R. Civ. P. 56(a). This standard requires "there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248. "Summary judgment is inappropriate where there is a genuine dispute over a material fact, 'that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Roberts v. Jackson Hole Mountain Resort Corp.,* 884 F.3d 967, 972 (10th Cir. 2018) (quoting *Anderson*, 477 U.S. at 248). "[W]e examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party, without making credibility determinations or weighing the evidence." *Roberts*, 884 F.3d at 971, n.3.

III. Analysis

A. Summary Judgment as to Plaintiff Trust.

Defendants argue that Plaintiff Trust cannot establish claims for fraud in the inducement and intentional misrepresentation[4] or for breach of the covenant of good faith and fair dealing because it didn't exist.

Defendants assert that the only alleged action taken in detrimental reliance in this case is the assignment of Sahagen's IP on April 2021 but that the Plaintiff Trust was formed later in September 2021. As a result, so the Defendants argue, the Trust could not have taken any detrimental actions relating to the IP assignment in April 2021. For the same reason, Defendants argue that the Trust was a stranger to the IP Assignment and that as a

---

[4] Wyoming law treats fraud in the inducement and intentional misrepresentation as the same claim with the same elements and uses the terms interchangeably. *See e.g. Excel Constr., Inc. v. HKM Eng'g, Inc.,* 2010 WY 34, ¶ 33, 228 P.3d 40, 48.

9

result no covenant of good faith and fair dealing ever arose between Plaintiff Trust and Defendants.

Plaintiffs argue that the Trust has a viable claim because the parties agreed, before the IP assignment, that a charitable trust would be created and would have control over Holdings, LLC and RSE Corp.  Plaintiffs also argue that the covenant of good faith and fair dealing can also arise from oral agreements, and that Sahagan, Jigolyk and Lora had oral agreements about the business plan.

The record conclusively demonstrates that the Trust did not exist before Sahagen assigned the IP to Holdings, LLC, or even earlier when Sahagen, Jigolyk and Lora made oral agreements regarding the business plan.  Plaintiffs raise no evidence or argument to the contrary.  Accordingly, it is factually impossible for Plaintiff Trust to have taken any part in the IP assignment contract or the oral agreements that preceded it.  Plaintiff cannot therefore establish the reliance element of fraud[5] and cannot establish that it was a party to a contract including the covenant of good faith and fair dealing.[6]  As a result, Plaintiff Trust's claims for fraud in the inducement and material misrepresentation and breach of the covenant of good faith and fair dealing are dismissed.

*B. Plaintiff Sahagen's Claim for Assault against Defendant Lora*

---

[5] "In Wyoming the elements of an action for fraud have been identified as a false representation by a defendant of material facts which are relied upon by a plaintiff to his damage." *Johnson v. Soulis*, 542 P.2d 867, 872 (Wyo. 1975).
[6] "Every contract imposes upon the parties a duty of good faith and fair dealing in its performance and its enforcement." *City of Gillette v. Hladky Constr., Inc.*, 2008 WY 134, ¶ 105, 196 P.3d 184, 211. "It requires that neither party to a commercial contract act in a manner that would injure the rights of the other party to receive the benefit of the agreement." *Id.* (citing *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, P 19, 18 P.3d 645, 654 (Wyo. 2001).

Plaintiff Sahagen's claim for assault consists of a phone call and text-message images that were received the following day.

"Wyoming follows the second restatement in defining tortious assault as an act intending to place another in imminent apprehension of harmful or offensive contact and that causes such imminent apprehension. *Frey v. Town of Jackson*, 41 F.4th 1223, 1241 (10th Cir. 2022) (citing *Jung-Leonczynska v. Steup,* 782 P.2d 578, 583 (Wyo. 1989); Restatement (Second) of Torts § 21 (Am. [**31] L. Inst. 1965)).[7] The comments to the restatement explain the term "imminent":

> "'[i]mminent' does not mean immediate, in the sense of instantaneous contact, as where the other sees the actor's fist about to strike his nose. It means rather that there will be no significant delay. It is not necessary that one shall be within striking distance of the other, or that a weapon pointed at the other shall be in a condition for instant discharge. It is enough that one is so close to striking distance that he can reach the other almost at once, or that he can make the weapon ready for discharge in a very short interval of time."

Restatement (Second) of Torts, § 29 cmt b.

Defendant Lora argues that Plaintiff Sahagen cannot establish that Lora intended, or that Sahagen held, an imminent apprehension because Lora and Sahagen were on two different continents. Plaintiff Sahagen responds that Sahagen didn't know where Lora was when Lora screamed threats over the phone at Sahagen and the next day when Lora sent the threatening text-message images of the wolf and the warrior.

It strains credulity that sending text-message images across continents may amount to assault, particularly in this case where the images of a fictionalized "samurai warrior"

---

[7] Plaintiffs and Defendants both cite to Wyoming legal authority and appear to agree that Wyoming law governs all of the claims in this case. *See* ECF 28; 32, 42.

and a wolf are sent between participants in business transactions. But the Court does not need to reach that issue as Plaintiff Sahagen fails, as a matter of law, to raise any evidence of imminence.

Sahagen was in Costa Rica when he received a phone call from Lora who was screaming at him that "bad things will happen to you." Sahagen Dep. pp. 71-73. He received the wolf and warrior pictures on his phone the next day. Sahagen Dep. pp. 71-73. Lora was at home in North Carolina. Lora aff. ¶ 13. When asked if he had any reason to believe Lora was near him, Sahagen testified "I didn't think about it" and explained that "[h]e could be anywhere he wants. He has money, he could fly the next day." Lora Dep. pp. 73, 75. What is missing is any indication that Sahagen perceived an imminent contact from Lora or any circumstances tending to show that Lora intended such imminent apprehension. There is nothing close to any indication that Sahagen perceived that Lora was "so close to striking distance that he can reach the other almost at once." *Id.; see* Restatement (Second) of Torts, § 29 cmt b. Accordingly, the Court finds that there is no material question of fact and Defendants' motion for partial summary judgment is GRANTED on the assault claim.

*C. Plaintiffs' Claim for Fraud in the Inducement and Intentional Misrepresentation*

Plaintiffs' claim for fraud in the inducement and intentional misrepresentation is essentially that Plaintiff Sahagen assigned his IP to Holdings, LLC in reasonable reliance on Defendant Lora's promise to establish the three-tiered structure of the business plan. ECF 9 ¶¶ 57-62. Sahagen alleges Lora "had no intention" of keeping his promises. *Id.* ¶ 59.

In Wyoming, "the elements of intentional misrepresentation or fraud are as follows: (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages." *Excel Constr., Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, ¶ 33, 228 P.3d 40, 48. To establish the reasonable reliance element of a fraud claim, "the false representation must occur prior to the execution of the contract" at issue. *Richardson v. Hardin*, 5 P.3d 793, 797 (Wyo. 2000) (citing *Schepps v. Howe*, 665 P.2d 504, 508 (Wyo. 1983)).

"The general rule is that fraud ordinarily cannot be founded upon a representation which is promissory in nature." *Johnson* 542 P.2d at 872. However, there is an exception: "if the representation, although promissory in nature, is made with no intention of performing it or with a present intention not to perform, it may then serve as a foundation for an action in fraud" *Id.* (citations omitted). "The promisor's intention not to perform his promise cannot be established merely by proof of its non-performance." *Meyer v. Ludvik*, 680 P.2d 459, 464 (Wyo. 1984) (citing Restatement (Second) of Contracts § 171(2) cmt b)).

The "clear, unequivocal, and convincing evidence" burden of proof in a fraud claim must be considered in determining whether Defendants' motion for summary judgment should be granted. *Applied Genetics Int'l, Inc. v. First Affiliated Secur., Inc.*, 912 F.2d 1238, 1243 (10th Cir. 1990) (citing *Rocky Mountain Helicopters*, 773 P.2d 911, 919 (Wyo. 1989); *Laird v. Laird*, 597 P.2d 463, 466 (Wyo. 1979) ("against the backdrop of a motion for summary judgment, fraud must be demonstrated in a clear and convincing manner"));

13

*See also Anderson*, 477 U.S. at 254 ("in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden").

Defendants argue that Plaintiffs' claim for fraud in the inducement and intentional misrepresentation fails because Plaintiffs do not allege any representations by Defendant RSE Corp., because Defendants incorporated the "three-tiered structure" just as Plaintiffs contend was represented, and because Plaintiffs suffered no damages.  On the point of damages, Defendants argue that Plaintiff Sahagen was never a shareholder of the companies at issue or a beneficiary of the trust at issue; that Sahagen can identify only wasted time and emotional trauma as damages; and, that all of Sahagen's rights in the IP Assignment remain unimpaired.

Plaintiffs assert that Lora did not implement the three-tiered structure because Lora secretly altered the Holdings, LLC operating agreement to take away voting rights from the Trust, effectively rendering the organization two-tiered.  Plaintiffs also argues that Sahagen was not a stranger to the transaction because he created Holdings, LLC and RSE Corp.  Plaintiffs contend that they were injured by the change in structure because Sahagen intended the Trust to control Holdings LLC to assist "millions of impacted people most in need of access to their own home equity."  Plaintiff Sahagen also says that he and the Trust were injured by the corporate move to Delaware because Delaware law gives Lora two votes as both a Director and as Chairman of the Board, while Wyoming would only give Lora one, giving Lora a "2-1" voting advantage.  The Defendants do not raise any arguments related to this claim in their reply.

Defendants are correct that Plaintiffs do not argue that evidence shows any representations by RSE Corp. related to the IP assignment, so the fraud and misrepresentation claim is DISMISSED with prejudice as to Defendant RSE Corp.

Defendants next contention is that Plaintiffs did not have damages. However, the Court has no difficulty finding that Plaintiff Sahagen has raised a material question of fact. At the very least, Plaintiff Sahagen's undisputed IP assignment to Holdings, LLC satisfies the damages element sufficiently to sustain the claim. Lora Aff ¶¶ 4,7.

Defendants argue that Lora's statements were not false as "it is undisputed that Lora has incorporated the three-tiered structure into his business." ECF 28 p. 10. Yet Plaintiffs present evidence tending to indicate that the three-tiered structure incorporated by Lora is not the three-tiered business plan that Lora agreed to implement. For instance, Jigolyk's affidavit indicates that he, Lora, and Sahagen agreed that the Trust "must always have control, including voting control, over [RSE Corp.] and [Holdings, LLC]," Jigolyk aff. ¶14, but that Lora instead put himself in control of Holdings LLC and RSE Corp. *Id.* ¶ 23. Thus there remains a question of fact whether Lora's statements regarding his intent to follow the plan were false.

IV. *Conclusion*

For the reasons stated above, Defendants' motion for partial summary judgment is GRANTED in part and DENIED in part.

Plaintiffs' Second Claim for fraud in the inducement and intentional misrepresentation is DISMISSED with prejudice as to Defendant RSE Corp. and as to

15

Plaintiffs Carole Mapleback and Christian Moore as trustees of the Impact Housing Foundation Trust.

Plaintiffs' Third Claim of Relief for breach of the covenant of good faith and fair dealing is DISMISSED with prejudice as to Plaintiffs Carole Mapleback and Christian Moore as trustees of the Impact Housing Foundation Trust.

Plaintiffs' Fourth Claim for Relief for assault is DISMISSED with prejudice.

IT IS SO ORDERED this 6th day of February, 2023.

*Nancy D Freudenthal*

NANCY D. FREUDENTHAL
UNITED STATES SENIOR DISTRICT JUDGE